**MUSIC SQUARE CHURCH,**
Plaintiff–Appellant,

v.

**UNITED STATES, Defendant–Appellee.**

No. 99–5109.

United States Court of Appeals,
Federal Circuit.

July 13, 2000

David B. Goldstein,, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., of New York, New York, argued for plaintiff-appellant. On the brief were Eric M. Lieberman; and James J. Jackson, of Washington, DC.

Randolph L. Hutter, Attorney, Tax Division, Appellate Section, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General; and Richard Farber, Attorney.

Before NEWMAN, CLEVENGER, and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

Music Square Church (MSC) appeals the dismissal of its complaint with prejudice. *See Music Square Church v. United States,* No. 96–396T (Fed.Cl. Apr. 15, 1999). We affirm.

I

MSC is a church founded by Tony and Susan Alamo. The Internal Revenue Service (IRS) recognized MSC as a tax-exempt organization under 26 U.S.C. § 501(c) in 1981. In a Final Adverse Determination letter dated April 5, 1996, however, the Commissioner of Internal Revenue determined that MSC was not an organization described in 26 U.S.C. § 501(c), and revoked MSC's tax-exempt status effective April 3, 1981. The stated bases for the revocation were that: MSC was so closely operated and controlled by and for the benefit of Tony Alamo that it enjoyed no substantive independent existence; that MSC was formed and operated by Tony Alamo for the principal purpose of willfully attempting to defeat or evade federal income tax; and that MSC was inseparable from Tony Alamo, and failed to operate for exclusively charitable purposes.

MSC filed a Petition for Declaratory Relief (Exempt Organization) Pursuant to 26 U.S.C. § 7428 in the Court of Federal Claims, challenging the revocation of MSC's tax-exempt status because of the IRS' failure to comply with 26 U.S.C. § 7611(c)(1)(A), which requires that a church tax examination take no more than two years to complete. The IRS initiated its church tax inquiry of MSC on December 20, 1989 by sending a Notice of Church Examination, and the Final Adverse Determination letter issued on April 5, 1996; thus, the inquiry took over six years. Even with a one-and-a-half-year delay that may have been agreed to by the parties, the inquiry into MSC's exempt status exceeded the two year limitation by nearly three years.

MSC filed a motion for summary judgment, seeking a determination that the Final Notice of Adverse Determination was void as untimely. In a preliminary Order dated April 30, 1998, the Court of Federal Claims struck MSC's argument that the IRS' Final Determination letter was untimely, because section 7611(e)(2)

barred MSC's claim concerning the two year limit of section 7611(c)(1)(A). Following MSC's request for reconsideration and clarification of this Order, the court issued a second Order dated August 24, 1998, denying MSC's motion for summary judgment on the ground that under 26 U.S.C. § 7611(e)(2) and 26 C.F.R. § 301.7611–1, the failure of the IRS to comply with the time limit requirement of section 7611(c)(1)(A) could not be raised as an affirmative basis for relief in a declaratory judgment proceeding. On April 9, 1999, the parties entered into a stipulation for entry of judgment in which MSC agreed to the dismissal of its complaint with prejudice, but without prejudice to appeal the denial of its summary judgment motion. The Court of Federal Claims issued judgment dismissing the complaint with prejudice on April 15, 1999, and this appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (Supp.1999).

## II

■ MSC's primary argument on appeal is that the proper interpretation of section 7611(e)(2) is that it merely sets forth the exclusive remedy for the violation of subsection 7611(e)(1), not for the entire section as held by the Court of Federal Claims. The government argues in response that section 7611(e)(2), properly interpreted, precludes MSC from attacking the Commissioner's revocation of its tax-exempt status on the ground that the Commissioner failed to conclude its audit of MSC in a timely fashion. As noted above, the Court of Federal Claims agreed with the government's position. We review the denial of a summary judgment without deference. *See Massie v. United States*, 166 F.3d 1184, 1187 (Fed.Cir.1999).

## A

The only question presented for our review is whether subsection 7611(e)(2) precludes a defense to the Commissioner's revocation action based on the IRS' failure to comply with section 7611(c)(1). A review of the relevant statute will provide background for our inquiry. Section 7611, also known as the Church Audit Procedures Act, was added by section 1033(a) of the Tax Reform Act of 1984, Pub.L. No. 98–369, 98 Stat. 494 (1984). Section 7611 sets forth specific procedures for the IRS to follow with respect to examinations of churches. Under the provisions of subsection 7611(a), the Secretary of the Treasury may begin a "church tax inquiry" only if an appropriate high-level Treasury official reasonably believes, on the basis of facts and circumstances recorded in writing, that a church: (i) may not be exempt, by reason of its status as a church, from tax under 26 U.S.C. § 501(a); or (ii) may be carrying on an unrelated trade or business within the meaning of 26 U.S.C. § 513. In addition, before beginning the church tax inquiry, the Secretary must provide written notice to the church of the inquiry. *See* 26 U.S.C. § 7611(a)(3)(A), (B). The statute further provides that an examination of church records may begin only after written notice of the examination has been given and the church has been provided with an opportunity for a conference with the Secretary if it so requests. *See id.* § 7611(b). Subsection (c)(1), upon which MSC relies, provides in relevant part:

> The Secretary shall complete any church tax status inquiry or examination (and make a final determination with respect thereto) not later than the date which is 2 years after the examination notice date.

26 U.S.C. § 7611(c)(1)(A). Subsection 7611(c)(2) provides for the suspension of the two year period under certain circumstances.

As the result of an examination, the Secretary may determine that an organization is not a church that is exempt from taxation or an organization eligible to receive tax-deductible contributions, or the Secretary may issue a notice of deficiency to the organization or in certain cases, assess an underpayment of tax. *See* 26 U.S.C. § 7611(d)(1). The Secretary may do so, however, "only if the appropriate

regional counsel ... determines in writing that there has been substantial compliance with the requirements of this section and approves in writing of such revocation, notice of deficiency, or assessment." *Id.* § 7611(d)(1)(B)(ii).

Section 7611(e) is the focus of this appeal. Under subsection 7611(e)(1), if there has not been substantial compliance with the notice requirements of subsection (a) or (b), the conference requirements of subsection (b)(3)(A), or the approval requirement of subsection (d)(1), then "with respect to any church tax inquiry or examination, any proceeding to compel compliance with any summons with respect to such inquiry or examination shall be stayed until the court finds that all practicable steps to correct the noncompliance have been taken." *Id.* § 7611(e)(1). Subsection 7611(e)(2) provides:

> Remedy to be exclusive– No suit may be maintained, and no defense may be raised in any proceeding (other than as provided in [§ 7611(e)(1) ] ), by reason of any noncompliance by the Secretary with the requirements of this section.

As noted above, the parties disagree whether this provision states the exclusive remedy for violations of section 7611, and thus bars recovery for failure to comply with the time limit set forth in subsection 7611(c)(1).

### B

■ The outcome of this case turns on the interpretation of subsection 7611(e)(2). We review issues of statutory interpretation *de novo*. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). The objective when interpreting statutes is to give effect to the intent of Congress. *See NLRB v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957); *In re Portola Packaging, Inc.,* 110 F.3d 786, 788 (Fed.Cir.1997). To determine the congressional intent, we begin, of course, with the language of the statute at issue. *See Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). Our inquiry must cease if the statutory lan-

guage is unambiguous and "the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

■ Subsection 7611(e)(2) expressly provides that "[n]o suit may be maintained, and no defense may be raised in any proceeding ... by reason of noncompliance by the Secretary with the requirements of this *section,*" (emphasis added), with the exception of the limited grounds on which a church is permitted to seek a stay of any proceeding to compel compliance with any summons issued in connection with a church tax inquiry or examination. The term "section," of course, refers to all of section 7611. Thus, by the plain language of the statute, a suit may not be maintained, nor may a defense be raised based on the violation by the IRS of subsection 7611(c)(1). Accordingly, we must acknowledge the clear intention expressed by Congress, that there is to be no judicial remedy for the IRS' failure to comply with any of the requirements in section 7611, aside from the exclusive remedy described in subsection 7611(e)(1). Congress cannot have intended, therefore, that subsection 7611(c)(1) set forth a mandatory two year time limit; accordingly, we conclude that that subsection was intended to be goal-oriented, or precatory in effect. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 11–18, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (discussing whether statute created an implied cause of action).

MSC asserts, however, that the language and structure of section 7611 as a whole demonstrates that the exclusive remedy provisions set forth in section 7611(e)(2) were intended to be limited *only* to the requirements enumerated in subsection 7611(e)(1). According to MSC, Congress intended to use the word "subsection" in subsection 7611(e)(2), and that the use of the word "section" must have been a scrivener's error. In support of this con-

clusion, MSC relies on the following arguments. First, it asserts that the term "requirements" in subsection 7611(e)(2) refers only to the requirements in subsection (e)(1). MSC explains that section 7611 as a whole uses the words "requirements" and "limitations", while subsection 7611(e)(1) references only "requirements". Thus, according to MSC, the reference to "requirements" in subsection 7611(e)(2) must refer only to the subsection 7611(e)(1) "requirements." In addition, subsection 7611(c)(1) states "[t]he Commissioner shall complete" a tax audit or examination within the two-year time limit. The use of the term "shall," argues MSC, indicates that the time limit is mandatory, rather than advisory, and that Congress thus did not intend to grant the IRS any discretion concerning compliance with the two year time limit. In light of this mandatory language, MSC asserts that Congress could not have intended to bar a remedy for violations of this subsection.

MSC's arguments are undone by the legislative history of subsection 7611(e). Put bluntly, the legislative history confirms Congress' intent that there is to be no judicial remedy for the IRS' failure to comply with any of the requirements in section 7611, aside from the exclusive remedy described in subsection 7611(e)(1). The House Conference Report states that "the exclusive remedy for *any* IRS violation of the church audit procedures" is the remedy provided in section 7611(e)(1). H. Conf. R. No. 98–861 at 113, *reprinted in* 1984–3 C.B., vol. 2, at 367 (emphasis added). The Report further states:

> Aside from the exclusive remedy described above [in section 7611(e)(1)], there is to be no judicial remedy for IRS violation of any of the church examination procedures provided by the conference agreement. IRS failure to comply with any of these requirements may not be raised as a defense or an affirmative ground for relief in any judicial proceeding including, but not limited to, a summons proceeding to gain access to church records; a declaratory judgment involving a determination of tax-exempt

status (sec.7428); or a proceeding to collect unpaid tax.

*Id.* at 1114, *reprinted at* 1984–3 C.B., vol. 2, at 368. This legislative history confirms that Congress meant what it said when it used the term "section" in the statute. The government, quite understandably, relies heavily on this legislative history. MSC offers no counter but to say that it does not think that the two year audit time is a "church examination procedure."

Moreover, we disagree with MSC that the meaning of "requirements" compels the conclusion that Congress erred when it used the word "section," instead of "subsection." Subsection 7611(e)(1) sets forth the remedy for failure to satisfy the listed requirements. Subsection 7611(e)(1) does not, however, impose the requirements itself; the subsection merely references requirements imposed by other subsections of the statute, namely subsections 7611(a), (b), and (d). Moreover, inspection of the whole of section 7611 indicates that the term "limitations" is used somewhat interchangeably with the term "requirements." *See, e.g.,* § 7611(d)(1) (listed as a "requirement" in subsection 7611(e)(1), but entitled "[l]imitations on revocation of tax-exempt status."). Nor are we convinced that the word "shall" in subsection 7611(c)(1)(A) overrides the clear import of subsection 7611(e)(2). When writing subsection 7611(e)(2), Congress was fully aware of all the "requirements" of the whole section. Had it wished to give compulsion effect to requirements other than those specified in subsection 7611(e)(1), it would have said so. MSC's assertion that Congress intended to give no discretion to the IRS is further belied by subsections 7611(d)(1) and (e)(1), which require "substantial compliance" with procedures or requirements before the Secretary may revoke a church's tax-exempt status, or before a summons proceeding may be stayed, respectively. Had Congress intended to deny any discretion to the IRS with respect to the requirements of section 7611,

it would surely have required "complete" compliance.

Finally, MSC argues that the interpretation of the Court of Federal Claims, which we adopt above, "completely eviscerate[s] all of the critical protections which Congress—in light of the requirements of the First Amendment—intended to give churches under [section 7611]." MSC relies on portions of the legislative history, which it interprets to generally support the conclusion that Congress enacted section 7611 in order to protect religious organizations against procedural violations during IRS audits or examinations.

■■■■■■ We cannot agree with this argument. We agree that Congress intended to convey benefits to churches in connection with their IRS affairs, and at the same time appreciate the bargain that Congress struck in terms of churches' ability to convert IRS lapses into anti-enforcement swords. The plain meaning of subsection 7611(e)(2), as well as the legislative history, indicates that there can be no doubt that Congress intended for remedies for violations of the procedural requirements of the Act to be strictly limited. This interpretation of subsection 7611(e)(2) does not necessarily leave churches without *any* remedy for the violation of subsection 7611(c)(2) by the IRS during a church audit or examination. Section 7611 does not by its terms supplant or replace the remedies enjoyed by ordinary taxpayers when confronting the IRS. Thus, Congress must have intended the Act to supplement, not supplant, the procedural protection and remedies that exist for an ordinary taxpayer. Indeed, subsection 7611(e)(1) is a taxpayer protection device not ordinarily available to the public. Accordingly, although a church may not assert a violation of a requirement of section 7611 (apart from those noted in subsection 7611(e)(1)) as a defense or as the basis of a declaratory judgment, a church may still assert any defense or challenge that is available for an ordinary taxpayer. Indeed, both parties agreed at oral argument that a church would have a remedy under the Adminis-

trative Procedure Act, 5 U.S.C. §§ 701–706, for a violation of a requirement of section 7611.

MSC's reliance on *United States v. Church of Scientology, Western United States,* 973 F.2d 715 (9th Cir.1992), and *United States v. Church of Scientology of Boston, Inc.,* 933 F.2d 1074 (1st Cir.1991) is misplaced. These cases, in a different procedural posture, addressed the standard that the IRS must satisfy when summoning documents for a church examination. In these summons enforcement cases, violation of a procedural requirement of section 7611 was not asserted as a defense, nor as a basis for a declaratory judgment action. Accordingly, the proper interpretation of subsection 7611(e)(2) was not directly, or implicitly, before the court in either of these cases, and the decisions have no bearing on our inquiry in the present case.

In summary, we conclude that, properly interpreted, subsection 7611(e)(2) precludes attack on the Commissioner's revocation decision on the ground that the audit exceeded the two years provided in subsection 7611(c)(1). Accordingly, we hold that the Court of Federal Claims did not err when it denied MSC's motion for summary judgment on the ground that the IRS' Final Determination letter was untimely.

## III

■■■■ Finally, we address the government's alternative argument that subsection 7611(i) applies to this case. Subsection 7611(i) provides that "[t]his section shall not apply to . . . (4) any willful attempt to defeat or evade any tax imposed by this title." The government asserts that because MSC willfully attempted to evade federal income tax, pursuant to subsection 7611(i), the other provisions of section 7611 do not apply at all to this case and MSC is therefore not entitled to seek relief for a violation of the two year time limit set forth in subsection 7611(c)(1). In support of its motion for summary judg-

ment, the government relied on evidence from a general jury verdict in a tax case in which MSC was not a party, and findings by the Tax Court regarding MSC that involved different tax years. The Court of Federal Claims declined to address this alternative theory.

The government correctly notes that we may affirm the Court of Federal Claims' judgment on any ground supported by the record. *See Massachusetts Mutual Life Ins. Co. v. Ludwig*, 426 U.S. 479, 481, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976); *Glaxo Group Ltd. v. TorPharm, Inc.*, 153 F.3d 1366, 1371 (Fed.Cir.1998). But the facts relied upon by the government to show MSC as a willful tax evader, described above, add up to less than that conclusion. Because the record proffered by the government does not support the alternative ground for affirmance, we reject that ground.

### CONCLUSION

For the reasons set forth above, we affirm the denial of MSC's motion for summary judgment that the IRS' Final Determination letter was void as untimely under subsection 7611(c)(1).

*AFFIRMED*