**Thomas E. RIGSBEE, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 00–5061.**

United States Court of Appeals, Federal Circuit.

Sept. 27, 2000.

Thomas E. Rigsbee, Woodbridge, Virginia, pro se.

Daniel D. McClain, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant-appellee. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel on the brief was Major James R. Agar II, U.S. Army Judge Advocate General's Corps, Litigation Division, Arlington, Virginia.

Before LOURIE, RADER, and LINN, Circuit Judges.

LINN, Circuit Judge.

Thomas E. Rigsbee seeks review of a final decision of the Court of Federal Claims ("CFC") dismissing Rigsbee's suit for failure to state a claim upon which relief can be granted. *See Rigsbee v. United States,* 46 Fed.Cl. 120 (2000). Because the CFC erred in its analysis of whether Rigsbee's retirement should be considered voluntary, we vacate the dismissal and remand.

## BACKGROUND

Rigsbee was a major in the Army. While serving as Company Commander of an Aviation Regiment, he received an Officer Evaluation Report ("OER") for the period February 19, 1992 through February 18, 1993. As with all OERs, it contained a subjective portion in which Rigsbee's attributes were evaluated and an objective portion in which Rigsbee was compared with his peers. Despite favorable comments in the subjective portion of the OER, the objective portion ranked Rigsbee below eight other majors being reviewed. *See id.* at 122. This resulted in a below-center-of-mass rating. *See id.* Rigsbee challenged this OER through a series of procedures that are not relevant to this appeal.

In May 1993, Rigsbee was reassigned to another position in the Army. Rigsbee alleges that the reassignment constituted a relief for cause from his Company Commander position and that the Army did not follow proper procedures. The Government asserts that Rigsbee was never formally relieved for cause and, as support for this position, points out that Rigsbee was never given a Relief for Cause OER.

Rigsbee was passed over for promotion to Lieutenant Colonel in both 1994 and 1995. As a result, and in accordance with 10 U.S.C. § 632(a), he was forced either to retire or to be discharged. *See* 10 U.S.C. § 632(a) (1994); *see also Rigsbee,* 46 Fed.

Cl. at 124. Rigsbee retired on October 31, 1995 at the rank of Major. In doing so, Rigsbee made it clear that he did not consider his retirement voluntary, stating that his application for early retirement "is not filed voluntarily and is filed under protest." *Rigsbee*, 46 Fed.Cl. at 124.

Rigsbee subsequently filed an appeal with the CFC claiming that the OER and the reassignment were both improper because the Army failed to provide required procedural protections, and that as a result he was twice passed over for promotion and forced to take early retirement. *See Rigsbee*, 46 Fed.Cl. at 121. The CFC analyzed Rigsbee's claims and determined that "to the extent that [Rigsbee] asserts procedural violations, he raised justiciable issues." *Id.* at 123. However, the CFC neither decided nor identified any such justiciable issues. Rather, the CFC dismissed Rigsbee's claims because it determined that Rigsbee's retirement was voluntary and that a voluntary retirement constituted a waiver of the relief sought by Rigsbee. *See id.* at 124. In a footnote, the CFC also stated that "[e]ven if [Rigsbee] had not waived his claims by voluntary separation from service at his then-current grade, we would conclude that defendant is entitled to judgment on the administrative record. However, given his voluntary retirement, there is no occasion for further explication." *Id.* at 124 n. 5.

Rigsbee appealed the CFC decision to this court. We have exclusive appellate jurisdiction. *See* 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

### A. Standard of Review

■ We review without deference the CFC's decision to dismiss Rigsbee's suit for failure to state a claim upon which relief can be granted. *See New York Life Ins. Co. v. United States*, 190 F.3d 1372, 1377–78 (Fed.Cir.1999).

### B. Analysis

#### 1. Involuntary Discharge

■ The CFC recognized that if Rigsbee's retirement were voluntary, "all of the claims for relief in this civil action [would be] deemed waived, whereas if it [were] involuntary, he [would be able to] prosecute his allegations of procedural defects." *Rigsbee*, 46 Fed.Cl. at 123. In deciding that Rigsbee's retirement was voluntary, the CFC characterized Rigsbee as being "faced with a choice between two undesirable alternatives (career-ending early retirement with pension benefits or involuntary discharge—for having been twice passed over for promotion—without pension benefits)." *Id.* at 124. The CFC was persuaded that Rigsbee "made a 'voluntary' choice of the least undesirable alternative." *Id.* The CFC further concluded that Rigsbee "could have preserved his rights to contest the alleged procedural irregularities affecting his promotion ... by suffering involuntary discharge, but he chose not to do so. He made an election." *Id.* The Government now acknowledges that the CFC's decision was in error, pointing to the plain language of 10 U.S.C. § 632(b). *See* 10 U.S.C. § 632(b) (1994). Rigsbee, proceeding *pro se*, does not comment on § 632(b). As explained below, we agree with the Government.

■ Although § 632(b) was enacted in 1980,[1] the case at bar presents this court with its first opportunity to interpret that part of the statute. *See Sammt v. United States*, 780 F.2d 31, 33 n. * (Fed.Cir.1985) ("express[ing] no opinion on the effect of the change in the law made by" 10 U.S.C. § 632(b)). Statutory interpretation is a question of law for the courts to decide. *See Immigration and Naturalization Serv. v. Cardoza–Fonseca*, 480 U.S. 421, 446–47, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Music Square Church v. United States*, 218 F.3d 1367, 1370 (Fed.Cir.2000). To interpret a statute, "we look first to the

1. *See* Defense Officer Personnel Management Act, Pub L. 96–513, § 105, 94 Stat. 2835, 2862 (1980) (codified at 10 U.S.C. § 632(b) (1994)).

statutory language and then to the legislative history if the statutory language is unclear." *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991); *see also Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (internal quotations omitted); *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) ("The starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter.") (internal quotations omitted); *Music Square Church,* 218 F.3d at 1370.

Proceeding then to the words themselves, § 632(b) could hardly be more clear. Section 632(b) provides that: "The retirement ... of an officer pursuant to this section shall be considered to be an involuntary retirement ... for purposes of any other provision of law." 10 U.S.C. § 632(b). Section 632(a) defines an "an officer pursuant to this section" and provides in relevant part that:

> [E]ach officer of the Regular Army ... who holds the regular grade of ... major ... who has failed of selection for promotion to the next higher regular grade for the second time and whose name is not on a list of officers recommended for promotion to the next higher regular grade shall—(1) be discharged ...; (2) if he is eligible for retirement ..., be retired ...; or (3) if ... he is within two years of qualifying for retirement ..., be retained on active duty until he is qualified for retirement and then retired....

10 U.S.C. § 632(a).

Notably, § 632(a) does not distinguish between voluntary and involuntary retirement. Moreover, the language of § 632(b), "shall be considered to be an involuntary retirement," is a clear directive that overcomes any indicators of voluntariness, such as election of retirement in lieu of being discharged. The language of § 632(a) is consistent with this interpretation of § 632(b). *See Robinson,* 519 U.S. at 340, 117 S.Ct. 843 (inquiring whether "the statutory scheme is coherent and consistent") (internal quotations omitted). As stated above, § 632(a) provides that certain officers shall "be discharged," "be retired," or "be retained ... until ... qualified for retirement and then [be] retired." 10 U.S.C. § 632(a)(1)-(3). The actor in each of these three scenarios is not the officer, and the language is not voluntary, regardless of whether the officer is discharged, retired, or retained and then later retired. *Accord Wotowic–McGill v. United States,* 42 Fed.Cl. 318, 318 (1998) (stating that § 632(a) provides for involuntary separation); *Muse v. United States,* 21 Cl.Ct. 592, 599 & n. 17 (1990) (same).

Finally, the closing words of § 632(b), "for purposes of any other provision of law," are unambiguous and apply, *inter alia,* to any legal actions taken by the retired officer, including actions justiciable before the CFC. Given the clarity of the statutory language, "our inquiry must cease" and we need not consider the legislative history for the purpose of interpreting § 632(b). *Robinson,* 519 U.S. at 340, 117 S.Ct. 843.

Section 632(b), as interpreted, clearly applies to Rigsbee's retirement. There is no dispute that Major Rigsbee was twice passed over for promotion and that his retirement was the "retirement ... of an officer pursuant to this section." Further, and contrary to the CFC's decision, the clear directive of § 632(b), "shall be considered to be an involuntary retirement," overcomes any interpretation of Rigsbee's election of retirement under protest as a voluntary act in lieu of being discharged. *See Rigsbee,* 46 Fed.Cl. at 124. Finally, the closing words of "for purposes of any other provision of law" apply to any justiciable issues that Rigsbee may have raised

at the CFC. Accordingly, we hold that Rigsbee's election of retirement pursuant to § 632(a) was involuntary and did not effect a waiver of Rigsbee's claims of procedural violations. When an officer retires pursuant to § 632(a) after having been twice passed over for promotion, the officer does not forfeit by such retirement any claims existing at that time. Thus, an officer in that position does not have to risk the consequences of involuntary discharge in order to preserve his or her right to contest whatever procedural irregularities may exist.

### 2. No Alternative Holding

■ We turn now to the Government's principal argument for affirmance. As recounted earlier, the CFC stated in a footnote that "[e]ven if [Rigsbee] had not waived his claims by voluntary separation ..., we would conclude that defendant is entitled to judgment on the administrative record. However, given his voluntary retirement, there is no occasion for further explication." *Rigsbee,* 46 Fed.Cl. at 124 n. 5. The Government asserts that the CFC thereby "articulated an alternative basis for its dismissal," and urges this court to affirm based on the CFC's "alternative" holding.

We disagree with the Government's characterization of the footnote as an alternative holding. First, the language of the CFC's footnote makes it clear that the CFC did not reach the issue of whether the Government was entitled to judgment on the administrative record. The CFC stated that it "would" so have concluded "if" Rigsbee had not waived his claims, but the CFC did not actually make any such alternative holding. It is the Government, not the CFC, that characterizes the footnote as an alternative holding.

Second, although the CFC explained that Rigsbee raised justiciable issues to the extent that he asserted procedural violations, the CFC did not specify what procedural issues were presented and, thus, cannot be considered to have decided any such issues. *See id.* at 123. Third, after opting not to specify, much less discuss,

the justiciable issues, the CFC determined that "there is no occasion for further explication," clearly indicating that it was relying on its determination that Rigsbee's retirement was voluntary. *Id.* at 124 n. 5. The CFC did not identify or decide any of the justiciable issues that may have been presented and specifically declined to offer any explanation or support for any judgment on the administrative record. Thus, there is no basis to conclude that the CFC made any alternative holding on the merits of Rigsbee's claims on the administrative record.

That does not necessarily end the issue. The Government reminds us that, "[a]s a general proposition, an appellate court may affirm a judgment of a district court on any ground the law and the record will support so long as that ground would not expand the relief granted." *Glaxo Group, Ltd. v. TorPharm, Inc.,* 153 F.3d 1366, 1371, 47 U.S.P.Q.2d 1836, 1840 (Fed.Cir. 1998).

However, the *Glaxo* court also stated that:

> If the grounds urged in support of the judgment have not been presented to and passed upon by the trial court, an appellate court may prefer not to address them in the first instance. If, however, the ground urged is one of law, and that issue has been fully vetted by the parties on appeal, an appellate court may choose to decide the issue even if not passed on by the trial court.

*Glaxo,* 153 F.3d at 1371, 47 U.S.P.Q.2d at 1840 (citations omitted); *see also Fireman's Fund Ins. Co. v. United States,* 909 F.2d 495, 499 (Fed.Cir.1990). In this case, we decline to address the merits of Rigsbee's case before the CFC has "passed upon" them and has provided the explication it was not required to make in light of its holding on the voluntariness of Rigsbee's retirement.

### CONCLUSION

Section 632(b) requires that any retirement entered into pursuant to § 632(a) be considered involuntary for purposes of any

other provision of law. Accordingly, the CFC erred as a matter of law in holding that Rigsbee's retirement was voluntary. Further, in electing retirement under § 632(a) instead of being discharged, Rigsbee did not forgo any claims he may have had for procedural irregularities. Because we find that the CFC did not make any alternative holding to support its decision, it was also an error to dismiss Rigsbee's civil action, and we remand the case to the CFC for consideration of any justiciable issues that were presented by Rigsbee on the administrative record.

*VACATED AND REMANDED*